markets by depriving customers of the benefits of competition between the Defendants' products, including competition based on price, service, functionality, and interfaces with other firms' products. The Horizontal Market Agreement constitutes an unreasonable restraint of trade in the markets for online sales, digital advertising and Operating Systems, and adversely affects interstate commerce.

250.    The Horizontal Market Agreement and Defendants' actions in implementing it violate Section 1 of the Sherman Act, 15 U.S.C. § 1.

## COUNT VIII: Violation of the Sherman Act (15 U.S.C. § 1)

## Declaratory Judgment

251.    Plaintiff incorporates by reference the preceding paragraphs of this Complaint as if fully restated herein.

252.    There is a relevant market for the hosting of browsers, operating systems, online news feeds, digital advertising, Apps and online sales franchises in the United States, as alleged above.

253.    Within this relevant geographic market, Defendants have violated Section 1 of the Sherman Act (15 U.S.C. § 1), by engaging in a contract, combination or conspiracy in restraint of trade and interstate commerce, the nature and effect of which is to restrict the ability of Plaintiff and other website designers, content creators, and advertisers to maintain and/own an online news feeds, digital advertising, develop Apps, or online sales franchises at competitive prices.

254.    Through their unlawful contract, combination or conspiracy to restrain trade and interstate commerce, Defendants have imposed in part, through governmental

agency, anti competitive prices and complete control of operating systems, hosting of Apps, online news feeds, digital advertising, and online sales franchises by offering Plaintiff and other website designers, content creators, and advertisers and/or private investors a Hobson's choice: pay the enormous demands associated with operating systems, Apps, online news feeds, digital advertising, or online sales franchise, or lose your website, or ability to advertise online. These demands have forced website designers, content creators, and advertisers –  like Plaintiff, that will not pay the supra-competitive price of the Defendants demands for hosting, Apps, online news feeds, sales franchises, or digital advertising – out of the market for Apps, online news feeds, digital advertising, or online sales franchise, as evidenced by the Defendants' governmental agency, horizontal price fixing scheme, shadow banning, demonetization and termination of Plaintiff's websites and YouTube channels. Indeed, as a result of Defendants' shadow banning, demonetization and termination of Plaintiff's websites and YouTube channels, Plaintiff lost not only the revenue, the channels and websites, but also any chance to host online news feeds, digital advertising, or online sales franchises in the future. In a competitive marketplace, Defendants could not have successfully implemented a horizontal price fixing scheme, shadow banned, demonetized, or terminated Plaintiff's websites and YouTube channels, or demanded monopolistic terms, conditions, or payments without governmental agency; and the Plaintiff would still be online hosting advertising, music, movies and news feeds.

255.  Defendants' unlawful contract, combination or conspiracy in restraint of trade and interstate commerce operates as a governmental agency, horizontal group

shadow ban, concerted demonetization and termination of Plaintiff's websites and YouTube channels. Defendants' conduct also operates as a horizontal price fixing scheme.

256.   Defendants' unlawful conduct constitutes an unreasonable restraint of trade. First, Defendants have complete market power in the relevant market. Second, the clear objective of Defendants' misconduct is to limit the number of competitive online news feeds, digital advertising, or online sales franchises and to increase Defendants' profits, through governmental agency, a horizontal price fixing scheme, by a horizontal group shadow ban, a concerted demonetization and termination of Plaintiff's YouTube channels, competitive websites and platforms to collect exorbitant advertising fees, and monopolistic fees paid by wealthier media corporations. Third, Defendants' governmental agency, horizontal price fixing scheme, horizontal group shadow ban, concerted demonetization and termination of Plaintiff's YouTube channels, competitive websites and platforms is not necessary for the production of online news feeds, digital advertising, online sales franchises, or the achievement of any pro-competitive business objective.

257.   Each of the Defendants is a participant in this unlawful contract, combination or conspiracy.

258.   Accordingly, Plaintiff, as a shadow banned, demonetized and terminated online franchise owner, is entitled to an Order of this Court declaring that:

(a) Defendants jointly and severally, at all times mentioned herein, were acting in governmental agency;

**(b)** Defendants' group shadow ban, concerted demonetization and termination of Plaintiff's YouTube channels, competitive websites and platforms; and their refusal to comply with their own contract, amount to an unreasonable restraint on trade and interstate commerce and a violation of the antitrust laws; and

**(c)** redistribution of a fair portion the resulting ill-gotten supra-competitive gains obtained by Defendants through artificially set advertising/hosting fees to Plaintiff as a quid pro quo for breaching the terms of those contracts,

### COUNT IX: Violation of the Sherman Act (15 U.S.C. § 2)

### Conspiracy to Monopolize (browsers, operating systems, online news feeds, digital advertising, Apps and online sales franchise platforms): Injunctive Relief

259.    Plaintiff incorporates by reference the preceding paragraphs of this Complaint as if fully restated herein.

260.    There is a relevant market for the browsers, operating systems, online news feeds, digital advertising, Apps and online sales franchises in the United States, as alleged above.

261.    Beginning in, or about September 1998 and continuing until the filing of this Complaint, the exact dates being unknown to the plaintiff, the defendants, and each of them, jointly and severally, have engaged in a continuing agreement, combination and conspiracy to suppress and eliminate competition in the production and sale of browsers, operating systems, online news feeds, digital advertising, Apps and online sales franchises in the United States, as alleged above, in violation of Section 1 of the Sherman Act, 15 U.S.C. § 2 (conspiracy to monopolize through concerted action directed at the

acquisition of monopoly power).

262.   In furtherance of this agreement, combination and conspiracy, the defendants did the following things, among others:

    a.   Defendants Facebook, Zuckerberg, Bezos, Amazon, Alphabet, dba, Google, dba, YouTube, Brin, Page, Sundai and Schmidt met and agreed (with multiple unnamed parties) between themselves to limit the number of browsers, operating systems, online news feeds, digital advertising, Apps and online sales franchise platforms in the United States, by agreement that each Defendant would acquire competing companies in the relevant markets; and by agreement the acquired competing companies were to be closed, dismantled, or with rare exception, were absorbed into Defendants' companies, thereby conspiring to suppress, eliminate competition and divide the revenue and profits from the supply of the sale of browsers, operating systems, online news feeds, digital advertising, Apps and online sales franchise platforms in the United States, between each Defendant as nearly equally as possible;

    b.   Defendants, and each of them, jointly and severally, met and further agreed (with multiple unnamed parties) to unlawfully secure the acquisitions of competitive websites, businesses, and advertising platforms including: Social/Photos, Search engines, Enterprise Tools/Productivity, Advertising, Commerce, Maps/Automobiles, Mobile, Dev Tools/Cloud Platform, Media and Entertainment, Cybersecurity, stealth semiconductor firm, Payments,

Multimedia & Graphics, Software, Wearables, Robotics, Energy, Consumer Products & Services, Smart Home, Telecommunications, Computer Software & Services, Aerospace & Defenses, Music, Business Intelligence, Analytics & Performance Mgmt, Healthcare, Internet Software & Services, Software/Gaming, Software/AI, Consumer electronics, Mobile Software & Services and Scientific & Engineering companies, thereby conspiring to suppress, eliminate competition and divide the revenue and profits from the supply of the sale of browsers, operating systems, online news feeds, digital advertising, Apps and online sales franchise platforms in the United States, between each Defendant as nearly equally as possible;

c.  The Defendants met and further agreed between themselves to utilize "Applied Semantic," or Google AdSpend/Adsense as the primary and exclusive point-of-sale and payment software for the purchase of online, digital advertising systems and payment for hosting online news feeds and digital advertising systems, thereby conspiring to suppress, eliminate competition and divide the revenue and profits from the supply of the sale of online news feeds, digital advertising systems and online goods between each Defendant as nearly equally as possible;

d.   The Defendants met and further agreed between themselves and AT&T, Verizon, and T-Mobile wireless service carriers to pre-install Google payment apps on their phones, thereby conspiring to suppress, eliminate competition and divide the revenue and profits from the supply of the sale of

browsers, operating systems, online news feeds, digital advertising, Apps and online sales franchise platforms in the United States, between each Defendant as nearly equally as possible;

e. Defendants Alphabet, Amazon, Facebook, met and further agreed between themselves and corporate leaders of <u>Alibaba,</u> Baidu, Microsoft, Tencent and Xiaomi to acquire and utilize  the Android OS as the primary and exclusive online operating system, thereby conspiring to suppress, eliminate competition and divide the revenue and profits from the supply of the sale of browsers, operating systems, online news feeds, digital advertising, Apps and online sales franchise platforms in the United States, between each Defendant as nearly equally as possible;

f. Defendants Facebook, Zuckerberg, Bezos, Amazon, Alphabet, dba, Google, dba, YouTube, Brin, Page, Sundai and Schmidt met and further agreed with the Chief Executive Officers of every movie and media company in the United States to exclusively buy, sell and host, videos, music, movies, news feeds and serve advertisements on videos, music, movies, news feeds and social media sites owned, or operated by the Defendants, jointly and severally, thereby conspiring to suppress, eliminate competition and divide the revenue and profits from the supply of the sale of browsers, operating systems, online news feeds, digital advertising, Apps and online sales franchise platforms in the United States, between each Defendant as nearly equally as possible;

g.  The Defendants further met, conspired and agreed between themselves to allow the 2012 Obama Presidential campaign to harness Defendant Facebook's Application Programming Interface (API) to access the company's "social graph," which mapped the Facebook users connections and enabled the Obama campaign to access information on millions of Defendant Facebook users' friends when they used the Facebook log-in button to access the campaign's website; and

h.  The Defendants further agreed between themselves to allow political campaigning and fundraising on their respective platforms, and to fund the Democrat party and the political campaigns of Barack Obama, Hillary Clinton and Joe Biden in 2008, 2012, 2016, and 2020, in order to escape governmental antitrust scrutiny.

263.   The aforesaid agreement, combination and conspiracy had the following effects, among others:

f.  it suppressed, restrained, and eliminated competition in the development of Apps, the sale of online news feeds, digital advertising systems and online goods in the United States;

g.  it reduced the number of operating systems to one; reduced independent advertisers, news feed providers, online (music, movie, videos) sales platforms on the Internet from over two-hundred (420) to three (3) (Four (4) including Chinese-owned Alibaba);

h.  it substantially raised the price of advertising and goods sold on the Internet;

     i.  it caused the U.S. purchase contract officer(s), to nevertheless award technological procurement contracts to Defendants as an undefinitized contract action, obligating the United States to pay Defendants unfair and unreasonable prices, that exceed billions of dollars, with the exact amount to be determined later; and

    j.  It increased the costs and profits proposed by Defendants as fair and reasonable for the price of browsers, operating systems, online news feeds, digital advertising, Apps and online sales franchise platforms in the United States to levels significantly in excess of historical costs and profits.

264.    Each of the Defendants is a participant in this unlawful agreement, combination or conspiracy.

265.    As a result of the illegal agreement, combination and conspiracy alleged in this Complaint, the plaintiff, Harry J. Williby, has been injured and financially harmed by the defendants.

**COUNT X: Violation of the Sherman Act (15 U.S.C. § 2)**

**Monopolization (of browsers, operating systems, online news feeds, digital advertising, Apps and online sales franchise platforms): Injunctive Relief**

266.    Plaintiff incorporates by reference the preceding paragraphs of this Complaint as if fully restated herein.

267.    The Defendants, and each of them, jointly and severally, possesses monopoly power in the market for browsers, operating systems, online news feeds, digital advertising, Apps, PC/tablet/smartphones and online sales franchise platforms.

Through the anticompetitive conduct described herein and above, the Defendants, and each of them, jointly and severally, have willfully maintained, and unless restrained by the Court will continue to willfully maintain, that power by anticompetitive and unreasonably exclusionary conduct. The Defendants, and each of them, jointly and severally, have acted with an intent illegally to maintain its monopoly power in the browsers, operating systems, online news feeds, digital advertising, Apps and online sales franchise platforms market, and its illegal conduct has enabled it to do so, in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.

**COUNT XI: Violation of the Lanham Act (Sections 43(a) 15 U.S.C. § 1125(a)(1)(A))**

**False designations of origin, false descriptions: Damages/Disgorgement**

268.   Plaintiff incorporates by reference the preceding paragraphs of this Complaint as if fully restated herein.

269.   Defendants' unauthorized use in commerce of spurious copies of the Corrupt Justice™/The Attorney Depot™/Wilabee™ Trademark in connection with the distribution, advertising, promotion, offering for sale, and/or sale of the YouTube/Blogger/Facebook/Amazon corporations constitutes use of a symbol or device that is likely to cause confusion, mistake, or deception as to the affiliation or connection of Defendants with Corrupt Justice™/The Attorney Depot™/Wilabee™ and as to the origin, sponsorship, association, or approval of Defendants' anti competitive Products in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

270.   Defendants' actions as alleged herein, including but not limited to their unauthorized use in commerce of spurious copies of the Corrupt Justice™/The Attorney

Depot™/Wilabee™ Trademark, constitutes use of a false designation of origin and misleading description and representation of fact that is likely to cause confusion, mistake, or deception as to the affiliation or connection of Defendants with Corrupt Justice™/The Attorney Depot™/Wilabee™ and as to the origin, sponsorship, association, or approval of Defendants' anti competitive Products in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

271.    At all relevant times, Defendants had actual and direct knowledge of Plaintiff's prior use and ownership of the Corrupt Justice™/The Attorney Depot™/Wilabee™ Trademark. Defendants' conduct is therefore willful and reflects Defendants' intent to exploit the goodwill and strong brand recognition associated with the Corrupt Justice™/The Attorney Depot™/Wilabee™ Trademark.

272.    Defendants' wrongful acts will continue unless enjoined by this Court.

273.    Defendants' acts have caused, and will continue to cause, irreparable injury to Plaintiff. Plaintiff has no adequate remedy at law and is thus damaged in an amount not yet determined.

274.    In addition, or alternatively, Plaintiff is entitled to a judgment of disgorgement against Defendants in an amount to be determined at trial.

**COUNT XII: LANHAM ACT FALSE ADVERTISING UNDER 15 U.S.C. § 1125(a)**

**Damages/Disgorgement**

275.    Plaintiff incorporates by reference the preceding paragraphs of this Complaint as if fully restated herein.

276.    Beginning in, or about June 2003 and continuing until the filing of this

Complaint, the exact dates being unknown to the plaintiff, the defendants, and each of them, jointly and severally, have published, distributed and disseminated electronic advertising brochures and other advertising statements which include false and/or misleading representations and disparaging accusations regarding Plaintiff's product.

277.   Defendants' association of its AdSpend/Adsense products with the phrase "pay-per-click," or with statements indicating Plaintiff would receive $0.25 per-click for hosting digital advertising on his websites and/or YouTube channels, constitutes a false or misleading representation of fact regarding the actual amounts paid to plaintiff for hosting digital advertising on his websites and/or YouTube channels.

278.   Defendants' use of false or misleading representations of fact in commercial advertising or promotion misrepresents the nature, characteristics, or qualities of Defendants' goods.

279.   Defendants' use of false or misleading representations of fact has the tendency to deceive a substantial portion of the target consumer audience, or actually deceives the target consumers.

280.   Defendants' false or misleading representations of fact are material because they are likely to influence the operating and/or purchasing decision of the target consumers.

281.   The Defendants, and each of them, jointly and severally, falsely or misleadingly represented products that are advertised, promoted, sold and distributed in interstate commerce.

282.   Plaintiff has been and continues to be injured by Defendants' false or

misleading representations of fact through the diversion of sales or loss of goodwill.

283.   The Defendants, and each of them, jointly and severally, knows that its representations of fact are false or misleading.

284.   Defendants' false or misleading representations of fact were done with bad faith and malice or reckless indifference to Plaintiff's and consumers' interests.

285.   Defendants' bad faith false or misleading representations of fact regarding the payment amount and methodology of its product makes this an exceptional case within the meaning of 15 U.S.C. § 1117.

286.   The Defendants, and each of them, jointly and severally, continues to make false or misleading representations of fact regarding the payment amount and methodology of its product and will continue to do so unless enjoined by this Court as provided by 15 U.S.C. § 1116.

287.   Plaintiff is entitled to an award of Defendants' profits due to sales of the falsely or misleadingly represented product, any damages sustained by Plaintiff, and the costs of the action, pursuant to 15 U.S.C. § 1117.

288.   In addition, or alternatively, Plaintiff is entitled to a judgment of disgorgement against Defendants in an amount to be determined at trial.

**COUNT XIII: LANHAM ACT FALSE ADVERTISING UNDER 15 U.S.C. § 1125(a) (as to Defendants Bezos, Amazon, Brin, Schmidt, Page, Pichai and Defendants Alphabet, dba, Google, dba, YouTube/YouTube TV):**

**Damages/Disgorgement**

289.   Plaintiff incorporates by reference the preceding paragraphs of this

Complaint as if fully restated herein.

290.    Beginning in, or about June 2003 and continuing until the filing of this Complaint, the exact dates being unknown to the plaintiff, the defendants, and each of them, jointly and severally, have published, distributed and disseminated electronic advertising brochures and other advertising statements which include false and/or misleading representations and disparaging accusations regarding Plaintiff's product.

291.    Defendants' association of its YouTube/YouTube TV products with the phrases "YouTube," "Broadcast Yourself," or with statements indicating YouTube/YouTube TV product websites are an "alternative to mainstream media and movie corporations," constitutes a false or misleading representation of fact regarding the actual affiliation, association and business relationships Defendant YouTube/YouTube TV has with mainstream media and movie corporations.

292.    Defendants' use of false or misleading representations of fact in commercial advertising or promotion misrepresents the nature, characteristics, or qualities of Defendants' goods.

293.    Defendants' use of false or misleading representations of fact has the tendency to deceive a substantial portion of the target consumer audience, or actually deceives the target consumers.

294.    Defendants' false or misleading representations of fact are material because they are likely to influence the operating and/or purchasing decision of the target consumers.

295.    The Defendants, and each of them, jointly and severally, falsely or

misleadingly represented products that are advertised, promoted, sold and distributed in interstate commerce.

296.   Plaintiff has been and continues to be injured by Defendants' false or misleading representations of fact through the diversion of sales or loss of goodwill.

297.   The Defendants, and each of them, jointly and severally, knows that its representations of fact are false or misleading.

298.   Defendants' false or misleading representations of fact were done with bad faith and malice or reckless indifference to Plaintiff's and consumers' interests.

299.   Defendants' bad faith false or misleading representations of fact regarding the actual affiliation, association and business relationships Defendant YouTube/YouTube TV has with mainstream media and movie corporations, makes this an exceptional case within the meaning of 15 U.S.C. § 1117.

300.   The Defendants, and each of them, jointly and severally, continues to make false or misleading representations of fact regarding the actual affiliation, association and business relationships Defendant YouTube/YouTube TV has with mainstream media and movie corporations, and will continue to do so unless enjoined by this Court as provided by 15 U.S.C. § 1116.

301.   Plaintiff is entitled to an award of Defendants' profits due to sales of the falsely or misleadingly represented product, any damages sustained by Plaintiff, and the costs of the action, pursuant to 15 U.S.C. § 1117.

302.   In addition, or alternatively, Plaintiff is entitled to a judgment of disgorgement against Defendants in an amount to be determined at trial.

## COUNT XIV: Breach of Contract

## (as to Defendants Bezos, Amazon, Brin, Schmidt, Page, Pichai and Defendants

## Alphabet, dba, Google, dba, YouTube/YouTube TV): Damages

303.   Plaintiff incorporates by reference the preceding paragraphs of this Complaint as if fully restated herein.

304.   Plaintiff fully performed all the "Terms and Conditions," covenants and promises to be performed on the part of the Plaintiff under the YouTube/Blogger/Google AdSense Program.

305.   The Defendants, and each of them, jointly and severally, failed to make all payments and perform all obligations under the "Terms and Conditions," covenants and promises of the YouTube/Blogger/Google AdSense Program.

306.   The Defendants, and each of them, jointly and severally, breached the "Terms and Conditions," covenants and promises of the YouTube/Blogger/Google AdSense Program by failing to make timely payments and by failing to pay all outstanding amounts, accrued interest, and fees upon demand.

307.   Although Plaintiff has demanded that Defendants perform all obligations under the "Terms and Conditions," covenants and promises of the YouTube/Blogger/Google AdSense Program, Defendants, and each of them, jointly and severally, failed and refused, and continue to fail and refuse to take any steps necessary to fully and completely make timely payments; pay all outstanding amounts; accrued interest; or fees.

308.   As noted above, Defendant Alphabet, Inc., dba, Google, dba, YouTube,

LLC., is the alter-ego of Defendant Jeff Bezos, dba, Amazon, Inc.

309.   As a direct and proximate result of Defendants' continuous breaches, Plaintiff has suffered extreme financial losses in the form of lost profits. Plaintiff has been damaged in the minimum amount of $1 Billion dollars for each year, beginning in 2008, or in an amount to be proven at trial as a result of Defendants' breach of the "Terms and Conditions," covenants and promises of the YouTube/Blogger/Google AdSense Program.

310.   Plaintiff's damages are ongoing and increasing due to Defendants' breach of the "Terms and Conditions," covenants and promises of the YouTube/Blogger/Google AdSense Program.

### COUNT XV: Fraud

### (as to Defendants Bezos, Amazon, Brin, Schmidt, Page, Pichai and Defendants Alphabet, dba, Google, dba, YouTube/YouTube TV)

303.   Plaintiff incorporates by reference the preceding paragraphs of this Complaint as if fully restated herein.

311.   The Defendants, and each of them, jointly and severally, misrepresented to Plaintiff that YouTube was a video advertising platform being marketed as an alternative to mainstream media and movie outlets, when in fact, as early as 2007, Defendants were in fact entering into multi-billion dollar contracts to host videos, movies, and televisions shows on behalf of mainstream media stations and movie outlets.

312. The Defendants knew they were hosting videos, movies, and televisions shows on behalf of mainstream media and movie outlets, rather than operating as an

alternative to mainstream media and movie outlets. The Defendants, and each of them, jointly and severally, perpetrated this fraud and misrepresentation by utilizing content creators/Blogger™ designers not affiliated with mainstream media and movie outlets, like Plaintiff, to build and market YouTube as an alternative to mainstream media and movie outlets.

313.   Defendants' misrepresentations were material. Plaintiff would not have spent ten (10) years creating two (2) YouTube channels (The Attorney Depot™ and The Harry Williby) if Plaintiff had known Defendants were actually under multi-billion dollar contract with mainstream media and movie outlets (for the entire ten (10) year period).

314.   The Defendants intended to induce Plaintiff to rely on its misrepresentations. The Defendants, and each of them, jointly and severally, knew that stating they were an alternative to mainstream media and movie outlets, Plaintiff would build and market YouTube as an alternative to mainstream media and movie outlets. The Defendants, and each of them, jointly and severally, had reason to expect that Plaintiff would rely on the misrepresentations that it made to Plaintiff because of the continuous contractual relationship between Plaintiff and Defendants.

315.   Plaintiff reasonably relied upon the representations Defendants made over the course of ten (10) years, while designing Blogger™ pages and YouTube channels.

316.   Plaintiff was justified in relying upon Defendants' representations that they were an alternative to mainstream media and movie outlets, because Defendants continued to use and advertise the phrases "YouTube," "Broadcast Yourself," and "YouTube [Content] Creator," and the Defendants never once, during the period of 2008

through 2018, advertise, announce, or inform Plaintiff that they were in fact, under multi-billion dollar contractual relations with every mainstream media and movie outlet in the country.

317. Plaintiff has been substantially harmed by Defendants' misrepresentations, because Plaintiff spent ten (10) years designing Blogger™ pages and YouTube channels, for the multi-trillion dollar profit of the Defendants and mainstream media and movie outlets, while netting negative profits, or earnings.

WHEREFORE, Plaintiff prays for relief as set forth below.

## COUNT XVI: Negligent Misrepresentation

**(as to Defendants Bezos, Amazon, Brin, Schmidt, Page, Pichai and Defendants Alphabet, dba, Google, dba, YouTube/YouTube TV)**

318. Plaintiff incorporates by reference the preceding paragraphs of this Complaint as if fully restated herein.

319. The Defendants misrepresented to Plaintiff that YouTube was an alternative to mainstream media and movie outlets, when in fact Defendants were signing multi-billion dollar contracts with mainstream media and movie outlets. The Defendants made such misrepresentations by electronic advertising, which Plaintiff relied upon for a period of ten (10) years.

320. The Defendants had no reasonable grounds to believe that these misrepresentations were true. Plaintiff joined YouTube as a content creator in October 2008. As early as 2007, the Defendants had in fact entered into a multi-million dollar agreement to host videos and shows produced and owned by mainstream media outlet,

NBC.

321.   The Defendants intended to induce Plaintiff to rely on its misrepresentations. The Defendants knew that because of its representation that YouTube was an alternative to mainstream media and movie outlets, Plaintiff would build and market YouTube as an alternative to mainstream media and movie outlets.  The Defendants knew that Plaintiff would rely on the misrepresentations made to him, because YouTube/Google Adsense used unique, confidential content creator identification numbers, when allowing creators to upload/host videos and/or when paying through the Google Adsense program.

322.   Plaintiff was justified in relying upon Defendants' representations that they were an alternative to mainstream media and movie outlets, because Defendants continued to use and advertise the phrases "YouTube," "Broadcast Yourself," and "YouTube [Content] Creator," and the Defendants never once, during the period of 2008 through 2018, advertise, announce, or inform Plaintiff that they were in fact, under multi-billion dollar contractual relations with every mainstream media and movie outlet in the country.

323.   Plaintiff has been substantially harmed by Defendants' misrepresentations, because Plaintiff spent ten (10) years designing Blogger™ pages and YouTube channels, for the multi-trillion dollar profit of the Defendants and mainstream media and movie outlets, while netting negative profits, or earnings.

WHEREFORE, Plaintiff prays for relief as set forth below.

**COUNT XVII: Breach Of Implied-In-Fact-Contract**

**(as to Defendants Bezos, Amazon, Brin, Schmidt, Page, Pichai and Defendants**

**Alphabet, dba, Google, dba, YouTube/YouTube TV)**

324.   Plaintiff incorporates by reference the preceding paragraphs of this Complaint as if fully restated herein.

325.   By their actions, the Defendants, and each of them, jointly and severally, entered into a contract with Plaintiff, whereby Plaintiff would create content and Defendants would provide advertisement on said content, and pay Plaintiff based upon consumer access to said advertisements.

326.   Because Defendants required Plaintiff and mainstream media and movie outlets to use unique, confidential content creator identification numbers, when allowing creators to upload/host videos and/or when paying through the Google Adsense program, the Defendants knew, or had reason to know that they were required to accurately advertise, announce, or inform Plaintiff that they were in fact, under multi-billion dollar contractual relations with every mainstream media and movie outlet in the country.

327.   When allowing the uploading/hosting of videos and/or when seeking payment through the Google Adsense program, Defendants did use the unique, confidential content creator identification numbers. The Defendants then reaped and shared billions  of dollars ($2.2 Trillion Dollars to date) in advertising revenue, with mainstream media/movie outlets, each year beginning in 2008 and continuing to present date, through the Google Adsense program.

328.   The Defendants breached the implied-in-fact contract with Plaintiff through its fraudulent conduct in which they identified as an independent entity, when in fact they were under multi-billion dollar contractual relations with every mainstream media and

movie outlet in the country. Additional breaches occurred when the Defendants allowed the mainstream media and movie outlets in the country to file and prevail upon frivolous copyright claims against Plaintiff.

329.   Plaintiff has been harmed by Defendants' breach. Based upon Defendants' conduct, Plaintiff was led to believe that he was uploading/hosting videos on behalf of an independent video streaming service; and that Plaintiff would receive the appropriate negotiated payment for those videos through the Google Adsense program. Plaintiff was instead deceived into uploading/hosting videos on behalf of Defendants and mainstream media/movie outlets.

WHEREFORE, Plaintiff prays for relief as set forth below.

**COUNT XVIII: Breach of Implied Covenant of Good Faith & Fair Dealing**

**(as to Defendants Bezos, Amazon, Brin, Schmidt, Page, Pichai and Defendants**

**Alphabet, dba, Google, dba, YouTube/YouTube TV)**

330.   Plaintiff incorporates by reference the preceding paragraphs of this Complaint as if fully restated herein.

331.   Plaintiff and Defendants entered into contracts whereby Plaintiff created Blogger™ pages and YouTube channels. In fulfilling their duty to act in good faith (a higher standard amongst merchants) the Defendants must accurately advertise, announce, and/or inform Plaintiff that they were in fact, under multi-billion dollar contractual relations with every mainstream media and movie outlet in the country, giving Plaintiff a basis to make an informed decision, and negotiate adequate compensation.

332.   The Defendants knew, or had reason to know that they were required to

accurately identify for whom they were actually under contractual relationships with.

333.   The Defendants knew, or had reason to know that the advertisement revenue they were generating was directly dependent upon the Blogger™ pages and YouTube channels created by Plaintiff.

334.   When allowing the uploading/hosting of videos and/or when seeking payment through the Google Adsense program, Defendants did use the unique, confidential content creator identification numbers. Plaintiff duly performed his duties under the contract.

335.   The Defendants breached the covenant of good faith and fair dealing governing every contract with Plaintiff by identifying as an independent entity, when in fact they were under multi-billion dollar contractual relations with every mainstream media and movie outlet in the country, reaping massive and ill-gotten profits.

336.   The Defendants breached the covenant of good faith and fair dealing governing every contract with Plaintiff, because the facts and evidence indicates the Defendants had no intention of operating as an alternative to mainstream media, or movie outlets. The Defendants in fact began secret multi-million contract negotiations with mainstream media and movie outlets beginning in 2006. Plaintiff, based upon Defendants' intentional and malicious breach of covenant of good faith and fair dealings, joined YouTube and Blogger™ in 2008.

337.   Plaintiff has been harmed by Defendants' breach. Had the Defendants informed Plaintiff that they were in fact, under multi-billion dollar contractual relations with every mainstream media and movie outlet in the country, Plaintiff would have had a

basis to make an informed decision, and negotiate adequate compensation.

WHEREFORE, Plaintiff prays for relief as set forth below.

**COUNT XIX: Unfair Competition, Cal. Bus. & Prof. Code §17200**

**(as to all Defendants)**

338. Plaintiff incorporates by reference the preceding paragraphs of this Complaint as if fully restated herein.

339. The Defendants are engaged in the business practice of representing themselves as an independent entity, hosting online, digital advertisements on Blogger™ pages, websites and YouTube channels, utilizing the Android OS and the Google AdSpend/Adsense payment program, when in fact they are under multi-billion dollar contractual relations with every mainstream media and movie outlet in the country.

340. The Defendants' practice is unfair because it is unethical, oppressive and unscrupulous. The Defendants falsely represented themselves as an alternative to mainstream media/movie outlets and an independent entity, to take advantage of the unpaid labor, marketing and video editing/production skill sets of Plaintiff as a content creator and blog/website designer. Instead of acting as an alternative to mainstream media/movie outlets and an independent entity, Defendants were in fact, under multi-billion dollar contractual relations with every mainstream media and movie outlet in the country. Upon information and belief, the Defendants profited by representing themselves as an alternative to mainstream media/movie outlets and an independent entity, taking advantage of the unpaid labor, marketing and video editing/production skill sets of Plaintiff as a content creator and blog/website designer, thereby converting

Plaintiffs' profits for their own use.

341.   Defendants further damaged Plaintiff by terminating and demonetizing Plaintiff's Blogger pages and YouTube channels. This wilful and egregious behavior damages Plaintiff's reputation and the trust Plaintiff and his channels, Blogger pages and websites have earned over a ten (10) year period.

WHEREFORE, Plaintiff prays for relief as set forth below.

**COUNT XX: Conversion**

**(as to all Defendants)**

342.   Plaintiff incorporates by reference the preceding paragraphs of this Complaint as if fully restated herein.

343.   The Defendants willfully interfered with Plaintiff's rights to its personal property. The Defendants, through, wilful misrepresentations and a fraudulent schemes of artifice, induced Plaintiff to develop of Blogger™ pages, websites and YouTube channels purportedly on behalf of Plaintiff and Defendants, but with full knowledge that Plaintiff was in fact developing Blogger™ pages, websites and YouTube channels on behalf of Defendants and mainstream media and movie outlets.

344.   Defendants' intentional and deceitful acts enabled them to dispose of the property in a manner inconsistent with Plaintiff's property rights. These property rights include the sale of digital advertisement at a designated price.

345.   Defendants' unauthorized transfer of Plaintiff's property caused substantial damages to Plaintiff.

WHEREFORE, Plaintiff prays for relief as set forth below.

## COUNT XXI: <u>Quantum Meruit</u>

### <u>Restitution</u>

### (as to all Defendants)

346.   Plaintiff incorporates by reference the preceding paragraphs of this Complaint as if fully restated herein.

347.   Defendants, in operating YouTube and enacting the Google Adsense Online Terms of Service, intended to benefit Host Websites and YouTube channels owners by establishing standards and procedures for hosting videos, content and payment decisions. The Policies are supposed to limit subjective decision-making and are designed to protect the interests and investments of Host Websites and YouTube channels owners like Plaintiff.

348.   Indeed, there can be no doubt that the operation of YouTube and enacting the Google Adsense Online Terms of Service were enacted for the benefit of Plaintiff. The Google Adsense Online Terms of Service were promulgated after the Defendants purchased Applied Semantics in 2003 and YouTube in 2006. Now, 18 years after their enactment, the Defendants have turned their back both on the purpose of the Google Adsense Online Terms of Service and Plaintiff.

349.   The Google Adsense Online Terms of Service holds: "*As used in these Terms of Service, "you" or "publisher" means the individual or entity using the Services (and/or any individual, agent, employee, representative, network, parent, subsidiary, affiliate, successor, related entities, assigns, or all other individuals or entities acting on your behalf, at your direction, under your control, or under the direction or control of the*

*same individual or entity who controls you). "We," "us" or "Google" means Google LLC, and the "parties" means you and Google*."

350.   The Defendants have long held that their Google Adsense contract with publishers/content creators could be terminated at any time. Such contracts are too unfair to be enforceable. During the past 10 years, Plaintiff has invested over a million dollars to attract, retain and support YouTube channels and Blogger™ and Facebook pages, all spent in reliance on the Google Adsense Online Terms of Service and the obligations of Defendants under those Policies.

Plaintiff made those investments with the express understanding between Plaintiff and the Defendants that: **(a)** Defendants would comply with the Google Adsense Online Terms of Service; **(b)** Defendants would support Plaintiff as the Host of YouTube channels and Blogger™ pages, and **(c)** Plaintiff would recoup his investments in the YouTube channels and Blogger™ and Facebook pages through the revenues generated by the Google Adsense program. The Defendants and all their subsidiaries benefited tremendously from Plaintiff's investment in the YouTube channels and Blogger™ pages.

351.   Neither Plaintiff nor Defendants believed that Plaintiff's investment in the YouTube channels and Blogger™ and Facebook pages was gratuitous, or that the Google Adsense Online Terms of Service somehow did not apply to Plaintiff or the Defendants. In fact, the Google Adsense Online Terms of Service continues, holding: "*Unless expressly authorized in writing by Google, you may not enter into any type of arrangement with a third party where that third party receives payments made to you under the AdSense Terms or other financial benefit in relation to the Services*."

352.    By virtue of allowing mainstream media/movie outlets to earn Adsense revenue, in blatant violation of the Google Adsense Online Terms of Service, Defendants have deprived Plaintiff of the revenues necessary to recoup his investment in the YouTube channels and Blogger™ and Facebook pages. Defendants have made no effort to reimburse Plaintiff for the investments it made in the YouTube channels and Blogger™ pages, or otherwise compensate Plaintiff for the unlawful shadow banning, demonetization and termination of Plaintiff's YouTube channels and Blogger™ and Facebook pages.

353.    Defendants are estopped from denying the obligatory nature of the Google Adsense Online Terms of Service. The Defendants adopted the Terms specifically to provide a process and standards to reign in subjective decision-making in the hope of avoiding further antitrust liability. Defendants, through their legal representatives, have admitted that the Google Adsense Online Terms of Service imposes obligations on the Defendants, and that the Terms must be satisfied for a Google Adsense payment to be approved. Given the history of the Google Adsense Online Terms of Service – and the Defendants' position regarding the Terms' role in the payment process – Plaintiff relied on the Google Adsense Online Terms of Service in structuring his relationship with the Defendants. Plaintiff's reliance caused Plaintiff to lose his significant investment in the YouTube channels and Blogger™ and Facebook pages, therefore allowing Defendants to reverse course and reject the Google Adsense Online Terms of Service – while enriching themselves – would be unjust.

354.    As a direct and proximate result of Defendants' actions, Plaintiff lost, and

has been deprived of, his investment in the YouTube channels and Blogger™ and Facebook pages.

355. Accordingly, Plaintiff is entitled to restitution in the amount of all sums invested by Plaintiff in the YouTube channels and Blogger™ and Facebook pages, in an amount to be determined at trial.

**COUNT XXII: Unjust Enrichment Under California Law**

**Damages/Disgorgement**

**(as to all Defendants)**

356. Plaintiff incorporates by reference the preceding paragraphs of this Complaint as if fully restated herein.

357. As a result of their unlawful and inequitable conduct described above, Defendants have and will continue to benefit and be unjustly enriched as a direct result of their collusive actions to the detriment of Plaintiff.

358. Plaintiff is entitled to the amount of Defendants' ill-gotten gains resulting from their unlawful, unjust, and inequitable conduct, and are entitled to reimbursement of all ill-gotten gains.

359. The economic benefit Defendants derived is a direct and proximate result of Defendants' unlawful practices.

360. The financial benefits Defendants derived rightfully belong to Plaintiff. Defendants have retained these benefits bestowed upon them under inequitable and unjust circumstances at the expense of Plaintiff. Defendants were enriched by their illegal activities at the expense of Plaintiff and thus Defendants should be ordered to make

1  restitution for the benefit of Plaintiff because it would be unjust to allow Defendants to

2

3  retain the benefits.

4  ///

5  ///

6  ///

7

8  ///

9  ///

10  ///

11

12  ///

13  ///

14  ///

15

16  ///

17  ///

18  ///

19

20  ///

21  ///

22  ///

23  ///

24

25  ///

26  ///

27  ///

28  ///

## X.   PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff Harry J. Williby respectfully requests that the Court enter judgment against Defendants and grant the following relief:

1.   On Count One of the Complaint, judgment in favor of Plaintiff and against Defendants, jointly and severally, in a minimum amount of $10 Billion Dollars ($1BN for each year 2008-2018) or an amount to be determined at trial and trebled pursuant to 15 U.S.C. § 15, and/or disgorgement in an amount to be determined at trial;

2.   On Count Two of the Complaint, judgment in favor of Plaintiff and against Defendants, jointly and severally, in a minimum amount of $10 Billion Dollars ($1BN for each year 2008-2018) or an amount to be determined at trial and trebled pursuant to 15 U.S.C. § 15, and/or disgorgement in an amount to be determined at trial;

3.   On Count Three of the Complaint, judgment in favor of Plaintiff and against Defendants, jointly and severally, in a minimum amount of $10 Billion Dollars ($1BN for each year 2008-2018) or an amount to be determined at trial and trebled pursuant to 15 U.S.C. § 15, and/or disgorgement in an amount to be determined at trial;

4.   On Count Four of the Complaint, judgment in favor of Plaintiff and against Defendants, jointly and severally, in a minimum amount of $10 Billion Dollars ($1BN for each year 2008-2018) or an amount to be determined at trial and trebled pursuant to 15 U.S.C. § 15, and/or disgorgement in an amount to be determined at trial;

5.   On Count Five of the Complaint, That the Court adjudge and decree as follows:

   a. That Defendants' conduct in requiring OEMs to license and distribute the

Android operating system, or any other software product as a condition of licensing any Android operating system product violates Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2; and

b.  That Defendants' agreements with OEMs restricting their right to modify the screens and functions of the Android operating system, or to add non-Google Internet browser software or other software products during the boot-up sequence, or to substitute non-Google Internet browser software or other software products for Google Internet browser software or other software products, violate Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2.

6.    On Count Six of the Complaint, That the Court adjudge and decree as follows:

a.  That Defendants' conduct in requiring persons to license and distribute its Internet browser software or any other software product as a condition of receiving placement in or access to any Android operating system product, including any screen or function thereof, violates Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2; and

b.  That Defendants' conduct in requiring or inducing persons to agree not to license, distribute, or promote any non-Google Internet browser, or to license, distribute, or promote such browser only on terms or under conditions that materially disadvantage it, violates

Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2.

7.     On Count Seven of the Complaint, That the Court adjudge and decree as follows:

a.  That the Horizontal Market Agreement constitutes an illegal restraint of interstate trade and commerce in violation of Section 1 of the Sherman Act and issue an injunction requiring rescission of the Horizontal Market Agreement and that the Defendants' use of the AdSpend/AdSense Pay-Per-Click program be enjoined;

b.  that the Defendants, their officers, directors, agents, employees and successors and all other persons acting or claiming to act on their behalf be enjoined and restrained from, in any manner, directly or indirectly, continuing, maintaining, or renewing the Horizontal Market Agreement, or from engaging in any other combination, conspiracy, contract, agreement, understanding or concert of action having a similar purpose or effect, and from adopting or following any practice, plan, program, or device having a similar purpose or effect;

c.  that the Defendants, their officers, directors, agents, employees and successors and all other persons acting or claiming to act on their behalf be enjoined and restrained from, in any manner, directly or indirectly, continuing, maintaining, or renewing the shadow ban, demonetization, or termination of Plaintiff's website(s) or video

channels, or removal of any content thereof on said website(s) or video channels, without order of this Court;

    d.  that the Plaintiff have such other relief as the Court may deem just and proper to redress, and prevent recurrence of, the alleged violation and to dissipate the anticompetitive effects of the Defendants' past violation(s); and

    e.  that the Plaintiff recover the costs of this action.

8.    On Count Eight of the Complaint, an Order of the Court declaring that Defendants': (i) funding, employment and service in the Obama and Biden Administrations (ii) shadow ban, demonetization, and termination of Plaintiff's website(s) or video channels and refusal to comply with their own Google Adsense Online Terms of Service, and (iii) redistribution of the resulting ill-gotten supra-competitive gains through artificially set digital advertising fees to all mainstream media/movie outlets as a quid pro quo for breaching the terms of those Google Adsense Online Terms of Service, amount to government agency and an unreasonable restraint on trade and interstate commerce and a violation of the antitrust laws.

9.    On Count Nine of the Complaint, That the Court adjudge and decree as follows:

    a.  That the Defendants, and each of them, jointly and severally, have attempted to monopolize, through government agency and political financial contributions, the market for Internet browsers, mobile browsers, operating systems, online news feeds, digital advertising,

Apps and online sales franchise platforms in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.

10.     On Count ten of the Complaint, That the Court adjudge and decree as follows:

a. That the Defendants, and each of them, jointly and severally, have willfully maintained its monopoly in the market for Internet browsers, mobile browsers, operating systems, online news feeds, digital advertising, Apps and online sales franchise platforms in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2; and

b. That the Defendants, and each of them, jointly and severally, have engaged in and/or are currently engaged in government agency and extraordinary political campaign funding to willfully maintain and fund its monopoly in the market for Internet browsers, mobile browsers, operating systems, online news feeds, digital advertising, Apps and online sales franchise platforms in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.

(i)     That Google, Facebook and Amazon, and all persons acting on their behalf or under their direction or control, and all successors thereto, be preliminarily and permanently enjoined from:

a. Donating any further computing, data service, or data access to political parties, or persons affiliated, or acting on behalf of a political party in the United States;

b. Donating any further monies, currencies (whether U.S., or foriegn) or items

of monetary, or financial value to political parties, or persons affiliated, or acting on behalf of a political party in the United States;

c. Enforcing Copyright takedown notices without full compliance with the Digital Millennium Copyright Act (17 U.S.C. §§ 512, 1201–1205, 1301–1332; 28 U.S.C. § 4001) and full compliance with 17 U.S. Code § 107 - Limitations on exclusive rights: Fair use;

d. Enforcing Copyright takedown notices on behalf of mainstream media and/or movie companies Defendants have entered into monetary contracts with and specifically those entities named herein said complaint;

e. Utilizing Pay-Per-Click in the selling of digital advertisements;

f. Utilizing Pay-Per-Click as the payment methodology for Content Creators, Website Owners, or YouTube Channel Owners;

g. Removing any content from, shadow banning, or demonetizing Plaintiff's competing website, wilabee.com, without direct, written approval of the Court;

h. Requiring any person to license or distribute Google's Internet browser software or any other software product or service as a condition of licensing or distributing any Android operating system product;

i. Requiring or inducing any person to agree not to license, distribute, or promote any non-Google Internet browser software or other software product, or to do so on any disadvantageous, restrictive or exclusionary terms;

j.  Taking or threatening any action adverse to any person in whole or in part as a direct or indirect consequence of such person's failure to license or distribute Google's Internet browser software or other software product, of such person's licensing or distributing any non-Google Internet browser or other software product, or of such person's cooperation with Plaintiff, or the United States;

k.  Restricting the right of any person to modify the screens, boot-up sequence or functions of any Android operating system product which such person has licensed so as automatically or otherwise to add non-Google Internet browser software or other software products, including but not limited to alternative user interfaces, or automatically or otherwise to substitute such non-Google Internet browser software or other software product for Google's Internet browser software or other software product, so long as such addition or substitution does not materially impair the performance of such Google/Android operating system product;

l.  Effecting assignments or transfers, forming new entities or associations, or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in subparagraphs (a) through (I).

(ii)  That the Court enter such other preliminary and permanent relief as is necessary and appropriate to restore competitive conditions in the markets affected by Defendants' unlawful conduct.

11.  On Count eleven of the Complaint, For judgment that Defendants, and each

of them, jointly and severally, have:

   (i)

      **a.**    have violated Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a);
And

      b.    Finding this to be an exceptional case pursuant to 15 U.S.C. § 1117;

   (ii)   That an injunction be issued enjoining and restraining Defendants, and each of them, jointly and severally, and each of their officers, agents, servants, employees, and attorneys, and all those in active concert or participation with it from:

      a.  Using the Wilabee™/The Attorney Depot™/Corrupt Justice™ Trademark or any other reproduction, counterfeit, copy or colorable imitation of the Wilabee™/The Attorney Depot™/Corrupt Justice™ Trademark on or in connection with any goods or services;

      b.  Engaging in any course of conduct likely to cause confusion, deception or mistake, or to injure Plaintiff's business reputation or dilute the distinctive quality of the Wilabee™/The Attorney Depot™/Corrupt Justice™ Trademark, including through the continued importation, distribution, sale or offering for sale of counterfeit Wilabee™/The Attorney Depot™/Corrupt Justice™ products;

      c.  Using any simulation, reproduction, counterfeit, copy, or colorable imitation of the Wilabee™/The Attorney Depot™/Corrupt Justice™ Trademark in connection with the promotion, advertisement, display, sale, offer for sale, manufacture, production, importation, circulation, or distribution of any

products;

d. Making any statement or representation whatsoever, or using any false designation of origin or false description, or performing any act, which can or is likely to lead the trade or public, or individual members thereof, to believe that any products manufactured, distributed, or sold by Defendants are in any manner associated or connected with Wilabee™/The Attorney Depot™/Corrupt Justice™, or are sold, manufactured, licensed, sponsored, approved, or authorized by Wilabee™/The Attorney Depot™/Corrupt Justice™;

e. Destroying, altering, removing, or otherwise dealing with the unauthorized products or any books or records which contain any information relating to the importation, manufacture, production, distribution, circulation, sale, marketing, offer for sale, advertising, promotion, rental or display of all unauthorized products which infringe or dilute the Wilabee™/The Attorney Depot™/Corrupt Justice™ Trademark; and

f. Effecting assignments or transfers, forming new entities or associations, or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in subparagraphs (a) through (f).

(iii)     For an assessment of: (a) damages suffered by Plaintiff, trebled, pursuant to 15 U.S.C. § 1117(b); or, in the alternative, (b) all illicit profits that Defendants derived while using counterfeits and/or infringements of the Wilabee™/The Attorney Depot™/Corrupt Justice™ Trademark, trebled, pursuant to 15 U.S.C. § 1117(b); or, in

the alternative, (c) statutory damages, awarded to Plaintiff pursuant to 15 U.S.C. § 1117(c), of up to $2,000,000 for each trademark that Defendants have counterfeited and/or infringed; (d) plaintiff be awarded a 10% market profit share of YouTube/YouTube TV; and (e) an award of Plaintiff's costs and attorneys' fees to the full extent provided for by Section 35 of the Lanham Act, 15 U.S.C. § 1117; and

(iv)   For costs of suit, and for such other and further relief as the Court shall deem appropriate.

12.   On Count twelve of the Complaint, For judgment that Defendants, and each of them, jointly and severally, have:

(i)

a.   have violated Subdivision 43(a)(1)(b) of the Lanham Act, 15 U.S.C. § 1125(a); and

b.   A Finding this to be an exceptional case pursuant to 15 U.S.C. § 1117.

(ii)   That an injunction be issued enjoining and restraining Defendants, and each of them, jointly and severally, and each of their officers, agents, servants, employees, and attorneys, and all those in active concert or participation with it from:

a.   Making any statement or representation whatsoever, or using any false designation of origin or false description, or performing any act, which can or is likely to lead the trade or public, or individual members thereof, to believe that any Google, Facebook, or Amazon pay-per-click digital advertising products manufactured, distributed, or sold by Defendants results in payment of $0.25 per click;

b. Destroying, altering, removing, or otherwise, dealing with the Google, Facebook, or Amazon pay-per-click digital advertising products, or any books or records which contain any information relating to the importation, manufacture, production, distribution, circulation, sale, marketing, offer for sale, advertising, promotion, rental or display of all Google Adsense digital advertising products; and

c. Effecting assignments or transfers, forming new entities or associations, or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in subparagraphs (a) through (c).

(iii)   For an assessment of: (a) damages suffered by Plaintiff, trebled, pursuant to 15 U.S.C. § 1117(a); or, in the alternative, (b) all illicit profits that Defendants derived while using false advertisements, misrepresentations, or misleading statements, trebled, pursuant to 15 U.S.C. § 1117(a); (c) plaintiff be awarded a 10% market profit share of YouTube/YouTube TV; and (d) an award of Plaintiff's costs and attorneys' fees to the full extent provided for by Section 35 of the Lanham Act, 15 U.S.C. § 1117; and

(iv)   For costs of suit, and for such other and further relief as the Court shall deem appropriate.

13.   On Count thirteen of the Complaint, For judgment that Defendants, and each of them, jointly and severally, have:

(i)

a. have violated Subdivision 43(a)(1)(b) of the Lanham Act, 15 U.S.C. § 1125(a); and

b. A Finding this to be an exceptional case pursuant to 15 U.S.C. § 1117.

(ii)    That an injunction be issued enjoining and restraining Defendants, and each of them, jointly and severally, and each of their officers, agents, servants, employees, and attorneys, and all those in active concert or participation with it from:

a. Making any statement or representation whatsoever, or using any false designation of origin or false description, or performing any act, which can or is likely to lead the trade or public, or individual members thereof, to believe that Alphabet, dba, Google, dba YouTube/YouTube TV is a separate entity, independent of mainstream media corporations, or box office movie outlets;

b. Destroying, altering, removing, or otherwise, any books or records which contain any information relating to the importation, manufacture, production, distribution, circulation, sale, marketing, offer for sale, advertising, promotion, rental or display of all Alphabet, dba, Google, dba YouTube/YouTube TV advertising products; and

c. Effecting assignments or transfers, forming new entities or associations, or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in subparagraphs (a) through (c).

(iii)   For an assessment of: (a) damages suffered by Plaintiff, trebled, pursuant to 15 U.S.C. § 1117(a); or, in the alternative, (b) all illicit profits that Defendants derived while using false advertisements, misrepresentations, or misleading statements, trebled, pursuant to 15 U.S.C. § 1117(a); (c) plaintiff be awarded a 10% market profit share of

YouTube/YouTube TV; and (d)  an award of Plaintiff's costs and attorneys' fees to the full extent provided for by Section 35 of the Lanham Act, 15 U.S.C. § 1117; and

(iv)   For costs of suit, and for such other and further relief as the Court shall deem appropriate.

14.   On Count Fourteen of the Complaint, a judgment in favor of Plaintiff and against Defendants, jointly and severally, in amount to be determined at trial;

15.   On Count Fifteen of the Complaint, a judgment in favor of Plaintiff and against Defendants, jointly and severally, in amount to be determined at trial;

16.   On Count Sixteen of the Complaint, a judgment in favor of Plaintiff and against Defendants, jointly and severally, in amount to be determined at trial;

17.   On Count Seventeen of the Complaint, a judgment in favor of Plaintiff and against Defendants, jointly and severally, in amount to be determined at trial;

18.   On Count Eighteen of the Complaint, a judgment in favor of Plaintiff and against Defendants, jointly and severally, in amount to be determined at trial;

19.   On Count Nineteen of the Complaint, a judgment in favor of Plaintiff and against Defendants, jointly and severally, in amount to be determined at trial;

20.   On Count Twenty of the Complaint, a judgment in favor of Plaintiff and against Defendants, jointly and severally, in amount to be determined at trial;

21.   On Count Twenty-one of the Complaint, a judgment in favor of Plaintiff and against Defendants, jointly and severally, in amount to be determined at trial;

22.   On Count Twenty-two of the Complaint, a judgment in favor of Plaintiff and against Defendants, jointly and severally, in amount to be determined at trial;

23.     An award to Plaintiff of its costs, including reasonable attorneys' fees, in prosecuting this action; and

24.     Any other relief to which Plaintiff may be entitled as a matter of law or equity, or which the Court determines to be just and proper.

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

Original Complaint

## XI. Demand For Jury Trial

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a jury trial on all issues so triable.

Dated this **25th** day of **February, 2021**

Harry J. Williby
Bar #: In Pro Se
Address: P.O. Box 990755
City/State/Zip: Redding, CA
Phone: 000-000-0000
Email: wilabee@protonmail.com

**Williby v. Brin, Case Number:** _____

**Plaintiff's Exhibit #** *—01—*

Original Complaint



Google Adsense Racketeering from 2018-08-16 14-01-46.png

ORIGINAL

PLAINTIFF'S EXH. #1





How did you perform in July?

This month you made

$1

+32.8%

from last month

| Impressions | Mobile | CTR |
|---|---|---|
| How many ads were shown | Share of mobile pageviews | Click-through rate |
| 1,541 | 50-60% | 0.3245% |

**Williby v. Brin, Case Number: _____**

**Page Intentionally Left Blank**

Original Complaint